UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                CAUSE NO. 3:97cr26(2) DRL

JOHN JOSE WATFORD,

    Defendant.

OPINION AND ORDER

John Jose Watford requests compassionate release. The court generally "may not modify a term of imprisonment once it has been imposed," but may do so when "extraordinary and compelling reasons warrant" a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). A defendant requesting release bears the burden of establishing extraordinary and compelling reasons. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). The sentencing guidelines enumerate several circumstances that may be extraordinary and compelling reasons. U.S.S.G. § 1B1.13(b). Release must satisfy the 18 U.S.C. § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021).

On February 17, 1998, the court (via another presider) sentenced Mr. Watford to an aggregate term of 802 months: concurrent terms of 262 months for three counts of aggravated bank robbery (with a deadly weapon), *see* 18 U.S.C. §§ 2, 2113(d), a consecutive term of 60 months for using and carrying a firearm in committing a violent act, *see* 18 U.S.C. §§ 2, 924(c), and two additional consecutive terms of 240 months for using and carrying a firearm in committing a violent act, *see* 18 U.S.C. §§ 2, 924(c). His projected release date is July 27, 2055. Mr. Watford raises several arguments for compassionate release. The court analyzes each in turn.

A. *Unusually Long Sentence.*

Mr. Watford first argues that he should receive a sentencing reduction because he is serving an unusually long sentence. Under the sentencing guidelines, when a defendant has received an "unusually long sentence" and has served at least ten years in prison, "a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6).

A few years ago, the former presider expressed that he would grant Mr. Watford compassionate release if he "had the authority to do so," and this court might well too. Mr. Watford was sentenced long before Congress passed the First Step Act—back when a second violation of 18 U.S.C. § 924(c) triggered a mandatory consecutive 20-year minimum sentence, even if both the first and second violations were asserted as counts in a single indictment. Thereafter the First Step Act amended § 924(c) to require a prior conviction before the heightened minimum would apply to a second § 924(c) charge. *See* 18 U.S.C. § 924(c)(1)(C)(i).

If Mr. Watford were sentenced today, each of his three § 924(c) charges would receive mandatory minimum sentences of 60 months—shaving 360 months (30 years) off his mandatory minimum sentence. He also would not be considered a career offender under today's version of the guidelines, as the non-retroactive 2016 Amendment 798 to the guidelines removed "residential burglary" from the list of crimes that could constitute a crime of violence. *See* U.S.S.G. § 4B1.2(a)(2). That said, as written, a non-retroactive amendment to the guidelines is not a qualifying change in the law, *see* U.S.S.G. § 1B1.13(b)(6), so Mr. Watford's motion today rises and falls with the First Step Act's amendment to § 924(c).

No one disputes that Mr. Watford falls within § 1B1.13(b)(6)'s intended reach, but the government asks the court to hold that this guideline exceeds the Sentencing Commission's delegated

2

authority and cannot form the basis for compassionate release under circuit precedent. The court takes a slightly more refined approach.

By federal law, the Commission, in promulgating general policy statements about compassionate sentencing modifications, must "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission has the duty to review and revise the guidelines, and "periodically [will] review the work of the courts, and [will] make whatever clarifying revisions to the [g]uidelines conflicting judicial decisions might suggest." *Braxton v. United States*, 500 U.S. 344, 348 (1991). When Congress expressly delegates to the Commission the power to define terms, a "reviewing court is not free to set aside those [guidelines] simply because it would have interpreted the statute in a different manner." *Batterton v. Francis*, 432 U.S. 416, 425 (1977); *see also Loper Bright Enters. v. Raimondo*, 219 L. Ed. 832, 856 (2024) (noting that Congress often "'expressly delegate[s]' to an agency the authority to give meaning to a particular statutory term").

Still, by law, the Commission's promulgations must be "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). The Commission "was not granted unbounded discretion" and "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997). Nor can the Commission "override the statute as [the court has] construed it." *Neal v. United States*, 516 U.S. 284, 294 (1996); *see also Loper*, 219 L. Ed. at 867 ("when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it").

Mr. Watford asks the court to interpret § 1B1.13(b)(6) in a manner inconsistent with federal law. In *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021), the court of appeals considered the First Step Act's amendments to § 924(c)'s stacking provisions and held that this *non-retroactive* change in the law could not form the basis for compassionate release. In reaching this conclusion, *Thacker* wrestled with

3

the meaning of "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A) because there was no applicable policy statement for prisoner-initiated compassionate release motions. *Id.* at 573. "[U]ntil the Sentencing Commission updates its policy statement to reflect prisoner-initiated compassionate release motions, district courts have broad discretion to determine what else may constitute 'extraordinary and compelling reasons' warranting a sentence reduction." *Id.* In other words, district courts had authority to find extraordinary and compelling reasons beyond the guideline policy statements, so long as they were consistent with the law. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

"But the discretionary authority conferred by § 3582(c)(1)(A) only goes so far. It cannot be used to effect a sentencing reduction at odds with Congress's express determination" that the amendments to § 924(c) "apply only prospectively." *Thacker*, 4 F.4th at 574. Rationales that "the prescribed sentence is too long, rests on a misguided view of the purposes of sentencing, reflects an outdated legislative choice by Congress, and the like . . . cannot supply an extraordinary and compelling reason to reduce a lawful sentence whose term Congress enacted, and the President signed, into law. Any other conclusion offends principles of separation of powers." *Id.* "[T]he discretion conferred by § 3582(c)(1)(A) does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstance warranting a sentencing reduction." *Id.*

Courts in this circuit have split on whether *Thacker* precludes the argument that the newly-promulgated guideline for an unusually long sentence is a reasonable interpretation of § 3582(c)(1)(A)(i). *Compare United States v. Black*, 2024 U.S. Dist. LEXIS 20084, 24 (N.D. Ill. Feb. 6, 2024) (Jenkins, J.) ("Seventh Circuit's emphatic repetition that nonretroactivity of sentencing amendments is ordinary, not extraordinary, leads the Court to conclude that it would hold that U.S.S.G. § 1B1.13(b)(6) is an impermissible reading of the statutory text"), *with United States v. Spradley*, 2024 U.S. Dist. LEXIS 71706, 14-15 (S.D. Ind. Apr. 18, 2024) (Magnus-Stinson, J.) ("*Thacker* and its progeny were premised on the fact that the Sentencing Commission had not yet released guidance as to prisoner-initiated compassionate

4

release motions"). And that split reflects a larger split among the circuits before the latest amendments to the guidelines. *Compare United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021) (First Step Act's non-retroactive amendments are not extraordinary and compelling), *with United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (courts may consider changes in the law extraordinary and compelling).

The court need not weigh in on this larger debate about U.S.S.G. § 1B1.13(b)(6). The law presents a narrower basis for decision today. First, Congress expressly says the amendment to § 924(c) applies only prospectively. *See* First Step Act, Pub. L. No. 115-391, § 403(b), 132 Stat. 5222 (2018). Mr. Watford cannot use a guideline to convert something deemed by Congress to be prospective only into something retroactive. Whatever other uses might exist for U.S.S.G. § 1B1.13(b)(6), this isn't one. So Congress says.[1] *See id.*; *see also* 28 U.S.C. § 994(a); *LaBonte*, 520 U.S. at 757.

Second, the law says "squarely and definitively" that the First Step Act's amendment to § 924(c)'s stacking provisions cannot constitute an extraordinary and compelling reason that warrants a sentencing reduction. *Thacker*, 4 F.4th at 576; *see also United States v. Williams*, 65 F.4th 343, 347 (7th Cir. 2023) ("judges must not rely on non-retroactive statutory changes or new judicial decisions when deciding whether an inmate has shown extraordinary and compelling reasons for relief"). It isn't the court's province to declare that an agency guideline has effectively overruled the law as stated by the court of appeals.

Third, that pitch makes no real sense today. Whatever gap the Sentencing Commission intended to fill for prisoner-initiated compassionate release petitions—the rationale offered by some cases for recently working outside *Thacker*—there was no gap to fill for prohibited retroactive uses of changes in the law as stated by Congress. That a guideline adds to prisoner-initiated petitions doesn't mean a

---

[1] The Sentencing Commission seems to have identified this issue just in part by excluding from a "change in the law" only a guideline amendment "that has not been made retroactive"—but not also a Congressional enactment that has not been made retroactive. U.S.S.G. § 1B1.13(b)(6); *see also* U.S.S.G. § 1B1.13(c). Under the First Step Act, Congress said it would not apply retroactively for someone already sentenced: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act, Pub. L. No. 115-391, § 403(b), 132 Stat. 5222 (2018).

countervailing Congressional pronouncement about a federal amendment has disappeared. The court thus remains unconvinced by opinions that have used the guideline amendment to bypass *Thacker* or the First Step Act's plain directive of prospective application only.

Fourth, non-retroactive changes in sentencing law aren't extraordinary by definition. Congress is free to change its mind, and it isn't unusual that it does. "[I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012). No matter the sense of fairness that might prevail on a new day, there is nothing extraordinary about leaving for days past the exact penalties that Congress approved, that the President signed into law, and that a court lawfully imposed then—particularly when Congress says it must so remain this way. *See Thacker*, 4 F.4th at 574.

In short, it would be untenable to apply § 1B1.13(b)(6)—in the manner that Mr. Watford wants here—without also concluding that doing so conflicts with the First Step Act. He has not offered a cogent reason for viewing the guideline as anything but hemmed by § 403(b) and § 994(a). Nothing of late has altered *Thacker*—and not just *Thacker*, but the plain import of § 403(b) and § 994(a). *See United States v. Moore*, 2024 U.S. App. LEXIS 5010, 2-3 (7th Cir. Mar. 1, 2024); *Williams*, 65 F.4th at 349.

Mr. Watford argues that Congress implicitly approved § 1B1.13(b)(6) by allowing it to take effect without objection, but this point of legislative acquiescence doesn't alter the plain pronouncement from Congress in the First Step Act. *See Monessen S.R. Co. v. Morgan*, 486 U.S. 330, 345 n.3 (1988) ("doctrine of legislative acquiescence is at best only an auxiliary tool for use in interpreting ambiguous statutory provisions"); *Bob Jones Univ. v. United States*, 461 U.S. 574, 600 (1983) ("Ordinarily, and quite appropriately, courts are slow to attribute significance to the failure of Congress to act on particular legislation."). There is no ambiguity to the First Step Act's non-retroactivity provision. The court thus denies today's motion.

B. *Care for Mr. Watford's Father.*

That said, if an independent basis for compassionate release exists, the court may consider changes in the law to determine the length of the warranted sentencing reduction under the 18 U.S.C. § 3553(a). *See Thacker*, 4 F.4th at 575. So the court explores whether another basis for early release exists.

The guidelines say the death or incapacitation of the defendant's parent, when the defendant would be the only available caregiver for the parent, constitutes an extraordinary and compelling reason for compassionate release. U.S.S.G. § 1B1.13(b)(3)(C). Mr. Watford's father says he "need[s] him bad" [356-2 ¶ 6]. His father is a quadriplegic living through prostate cancer [355-2 PDF 34]. He has a longtime partner that checks in on him, though she no longer has the strength to move him from his bed to his wheelchair, so he is often bedridden for long periods of time [356-2 ¶ 4]. On several occasions, he has been hospitalized after being dropped during an attempted transfer to the wheelchair [*id.* ¶ 5]. He has missed doctor's appointments [*id.* ¶ 6; 355-2 PDF 6]. He has suffered infections due to lack of care [356-2 ¶¶ 5-6]. He has two siblings—one is in a nursing home and the other has bad knees and a history of stealing [*id.* ¶ 7]. He has children in-state, though they have their own children and work responsibilities and "wouldn't cross the street to come see" their father [*id.*].

The government argues that, though Mr. Watford's father has a serious medical condition, Mr. Watford hasn't shown that he is the only available caregiver. After all, "[r]efusal [to] provide care [] does not equate to unavailability." *United States v. Armour*, 2024 U.S. Dist. LEXIS 66314, 14 (S.D. Ind. Apr. 11, 2024); *see also United States v. Worthen*, 2023 U.S. Dist. LEXIS 135672, 6 (S.D. Ind. Aug. 4, 2023) ("Mr. Worthen has not provided any evidence that he is the only possible caregiver for his grandparents. In fact, his submission indicates that there are other possible caregivers available, but they are 'unwilling.'"). Mr. Watford has children in-state that may have typical life responsibilities, but they are not unavailable—they just need to take care of their father. Mr. Watford isn't the only available caregiver, so this record doesn't present extraordinary and compelling reasons for early release.

7

C. *Other Reasons Similar in Gravity.*

The guidelines also provide that a prisoner may present "any other circumstance or combination of circumstances, when considered by themselves or together with any of the reasons described" in the preceding paragraphs (*e.g.*, the health and family circumstances of the defendant, or whether the defendant has suffered abuse), that are "similar in gravity." U.S.S.G. § 1B1.13(b)(5). "[N]o matter how the threshold is defined, a combination of factors may move any given prisoner past it, even if one factor alone does not." *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023).

Mr. Watford first argues that he has strong support from his family and friends. Indeed, the government described this support as "enviable" [351 at 18]. His godmother writes, "I could not have asked God for a better godson" [356-8 PDF 2]. He has a tremendous support system awaiting him upon release. His uncle writes that the family is "prepared to help him to successfully transition back into the community to a position of productivity" [356-12]. A friend writes that his "family will support John Watford as he reintegrates back into his community; he will be afforded all the necessary resources available to him to be successful" [356-13 PDF 3]. His godmother writes that "[f]amily support, [j]ob offers, transportation, housing and etc. are all available to John. . . . A job is guaranteed. He would not have to struggle financially at all" [356-8 PDF 2].

Mr. Watford has earned his GED and taken dozens of classes over hundreds of hours [*see* 356-14]. He is preparing for release, having taken job search and resume writing courses [*see id.*]. He has earned a reputation in the Bureau of Prisons as "task-oriented" and someone who "held his job at a high degree with flawless performance" [356-15]. His supervisor writes that he has mentored young inmates and helped them file legal documents [*id.*]. A retired correctional steward describes him as a "kind gentleman" who "show[s] support for others" [356-16 PDF 2]. The former presider noted that these letters tend to show that Mr. Watford "has reformed during his time in prison" [354 at 8]. His last disciplinary infraction came in 2014—when he allowed another inmate to take his turn on the phone [316 at 28].

8

Mr. Watford's family support and rehabilitation are encouraging and commendable. But they aren't circumstances similar in gravity to a defendant staring down the reality of a terminal illness, or a defendant in desperate need to keep his child out of foster care, or a defendant who was abused by prison staff. *See* U.S.S.G. §§ 1B1.13(b)(1), (b)(2), (b)(3), (b)(4). In large measure, this argument would have the court grant compassionate release based virtually on rehabilitation alone—something the court cannot do. *See* 28 U.S.C. § 994(t). Rehabilitation is one expectation of the criminal justice system; and, notwithstanding many recidivism rates, it would not in the typical case be deemed extraordinary. And even weighing rehabilitation as a factor in combination with Mr. Watford's family support, *see United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022), the court cannot view this record as presenting extraordinary and compelling reasons for early release.

CONCLUSION

The court must deny Mr. Watford's request for compassionate release because he hasn't met the threshold showing of an extraordinary and compelling reason. Though Mr. Watford faces an unusually long sentence that a change in the law might rectify, Congress has said what Congress has said, and the court must follow the will of the People as expressed by their representatives. The court thus declines to address the § 3553(a) factors. The court DENIES Mr. Watford's motion for compassionate release [356] and GRANTS the motions to seal [355, 361, 365].

SO ORDERED.

July 30, 2024                                          *s/ Damon R. Leichty*
                                                       Judge, United States District Court